TURTLE et al. v. NORTHWESTERN STEAMSHIP CO.

(District Court, W. D. Washington, N. D. April 27, 1907.)

No. 3,025.

1. SEAMEN—CONTRACT OF HIRING—DEVIATION FROM WRITTEN ARTICLES.

In view of Rev. St. § 4511 [U. S. Comp. St. 1901, p. 3068], which provides that the shipping articles signed by a crew shall indicate the nature of the intended voyage, a shipowner, when sued by members of the crew for damages resulting from a deviation from the voyage specified in the articles, cannot be permitted to show by parol evidence that the members of the crew were informed that the nature of the intended voyage was materially different from that stated, and that they assented to the deviation at the time of their engagement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, § 23.]

2. SAME—DAMAGES RESULTING FROM BREACH OF CONTRACT.

Libelants signed shipping articles for a voyage from Seattle to Shanghai, China, "and such other ports and places in any part of the world as the master may direct," and back to a final port of discharge on Puget Sound. It was during the time of the war between Japan and Russia, and the vessel was in fact loaded with a contraband cargo for the Russian government, and her destination was Vladivostok, if that port could be reached. It was not shown, even if it had been competent to do so, that the crew knew the real nature of the voyage. The voyage commenced in January, and the vessel proceeded first to Alaska and then by a northern route to avoid capture, and, owing to the season, she was caught in the ice and held for 41 days, and the crew suffered much hardship. She was subsequently captured by a Japanese warship, and condemned as a prize, the crew being detained for a time and then returned to Seattle, where their expenses and wages at the contract rate were paid, and they receipted for the same in full. Held, that the voyage made was one not indicated by the articles, but one materially different and more hazardous, and for which the current rate of wages was higher than those

paid, and that under the circumstances libelants were entitled to recover damages for the unusual hardships to which they were subjected by reason of the deviation.

3. SAME—NATURE OF ACTION—ESTOPPEL.

Such an action is not one in disaffirmance of the contract made by the shipping articles, but one to recover damages for its tortious breach, and the acceptance of the stipulated wages did not create an estoppel which barred such recovery.

In Admiralty. Libel in personam by seamen to recover damages for suffering in consequence of being carried to sea on a voyage to a port of a belligerent nation in time of war, when the nature of the intended voyage was not indicated by the shipping articles which they signed. On final hearing. Decree for libelants.

Jesse A. Frye, for libelants.

John P. Hartman, for respondent.

HANFORD, District Judge. During the time of the recent war between Japan and Russia, the steamship Tacoma was chartered to carry a cargo of military stores, which contractors had undertaken to supply for use of the Russian government. The steamship started with her contraband cargo from Seattle in the month of January, 1905. She cleared at the custom house, and was documented for a voyage from Seattle to Shanghai, China, and the shipping articles signed by her officers and crew constitute a contract of employment for a voyage "from the port of Seattle to Shanghai, China, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States, on Puget Sound, for a term of not exceeding six calendar months." The shipping articles also contain a clause which reads as follows:

"Should vessel not return to the U. S., passage and wages of crew to be paid back to Seattle."

The captain was instructed by the owner to proceed from Seattle to Dutch Harbor, and there take on an additional supply of coal for fuel, and then proceed by a northerly and unusual course to reach Vladivostok, and, if he found that port to be not blockaded by the war vessels of Japan, nor obstructed by ice, he should enter it and deliver his cargo there, but he was not to run a blockade, and, if he found it impracticable to deliver the cargo at Vladivostok, he should proceed to Shanghai, China, and deliver the cargo to the consignees there. As a consequence of attempting to reach Vladivostok in the winter season by way of the northern seas, the vessel was caught in an ice jam, and detained 41 days, and immediately after getting free from the ice she was captured by a Japanese war vessel, and was afterwards condemned by a Japanese Prize Court and confiscated.

The libelants and intervening libelants were all members of the crew on the voyage referred to, and this suit is to recover damages claimed for taking them to sea on a venture different from the voyage indicated by the shipping articles which they signed, and for unusual hardships endured while the vessel was in the ice, and for humiliation suffered by them while detained by the Japanese as prisoners, and for

discomfort alleged to have been suffered by reason of the bad condition of the quarters which they were obliged to occupy, and the bad food served to them while they were waiting for an opportunity to return to Puget Sound, and additional discomfort on the passage homeward by reason of the inadequate accommodations and bad food provided. Their living expenses and wages at the contract rate until their return to Seattle, and the expense of their homeward trip, were all paid by the respondent, and at the time of receiving their wages in the presence of the United States Shipping Commissioner they signed a written acknowledgment of payment in full of the wages earned under their contract. On the part of the respondent it is claimed that, by receiving and receipting for their wages, the libelants became estopped from claiming damages on account of any wrongful deviation from the voyage for which they were shipped; also, that they were not misused in the prosecution of an extra hazardous enterprise without their consent, because they were all informed and understood before the voyage was commenced that the ship was to go to Dutch Harbor for coal and proceed from thence to Vladivostok or Shanghai to discharge the cargo; also, that the libelants are not entitled to damages because they were not exposed to unusual perils, and they did not suffer hardships other than such as are usual and incident to the employment of mariners.

Considering the season of the year at which the voyage was undertaken, the intended destination of the ship, the climatic conditions to be expected, and that the cargo which the ship carried consisted mainly of military stores for use of one of the belligerent nations, I must conclude that the ship was engaged in a venture of extraordinary peril, and statements made by the captain in his testimony justify the inference that the going rate of wages at the time for a voyage to Vladivostok was higher than the rate of wages for an ordinary voyage from Puget Sound to Shanghai. The shipping articles contain no clear declaration that the crew were to go in the ship on a voyage to a port of a belligerent nation, nor that she was to incur the risk of capture and detention by reason of having contraband goods on board, and the specified rate of wages to be paid to the crew was the rate for an ordinary voyage of a merchant ship from Puget Sound to Shanghai at that time. Therefore the voyage on which the ship was sent by her owner was materially different in its nature and a deviation from the voyage specified in the shipping articles. The law requires that the shipping articles to be signed by each member of the crew before a vessel proceeds upon a voyage shall indicate the nature of the intended voyage. Rev. St. U. S. § 4511; Comp. St. U. S. 1901, p. 3068. It would be an evasion of this requirement to permit the owner to prove by parol evidence that the members of the crew were informed that the nature of the intended voyage was materially different from the voyage specified in the written contract, and that they assented at the time of their engagement to a deviation.

The evidence fails to prove that the libelants were informed that the destination of the ship was Vladivostok or that they consented to go there. The testimony of Mr. Rosene, president of the company, on this point, is to the effect that, if the crew were misinformed or de-

ceived as to the destination of the ship, it was contrary to his instructions, and he disclaims any personal knowledge as to the information given to the crew with respect to the voyage. The captain's testimony is to the effect that he did inform the first officer and the chief engineer and the boatswain that the ship would go to Vladivostok, if practicable to do so, and that he instructed them to give this information to the crew, and he assumes that all of the crew were so informed. He also states that after the shipping articles had been signed, and before the final departure from the port of Seattle, the crew en masse made a demand on him for the higher rate of wages for a voyage to Vladivostok, and that he then, in response to that demand, said to them, in substance, "You all know the destination of the ship, and those who are unwilling to go in the ship may go ashore," and that certain members of the crew did leave the ship. If this statement is true, the captain had an opportunity, with the crew on board, and free from the interference of others, to have explained his intentions candidly, but, instead of doing so, he evaded the important question as to the actual destination of the ship. He might then have assented to their demand for increased wages for the extra hazardous voyage to Vladivostok, but he did not do so; and under such circumstances the crew had a right to infer that the voyage for which they were engaged was the same as indicated by the shipping articles. The captain also claims that it was a matter of general notoriety that the ship was going to Vladivostok, made so by reports to that effect published in the newspapers. There is no evidence tending to prove that the captain's instructions to the officers and the boatswain, if given, were obeyed, nor that the newspapers containing information as to the destination of the ship were circulated among the crew or read by any of them. On the contrary, there is direct and positive testimony, uncontradicted, that Mr. Raymond, the second assistant engineer, who was hired by the chief engineer, was induced to accept his position by positive assurances given him by the chief engineer that the ship was going to Shanghai, and not to Vladivostok, after he had informed the chief engineer that he was unwilling to go to the port last mentioned. The respondent has failed to prove by a preponderance of the evidence that the crew consented to go on a voyage to Vladivostok, and all the evidence on this point is incompetent, for the reason that the law is mandatory in requiring the contract to be in writing, and the rights of the parties under the written contract cannot be avoided or changed by parol evidence. The attempt to reach Vladivostok and to avoid capture by taking an unusual route in midwinter subjected the crew to extra perils and unusual hardships, in violation of their contract. The ship was not provided with a sufficient supply of fuel and provisions for the period of her long detention when she was wedged in the ice. The claims for damages on account of physical and mental suffering and humiliation and discomfort on the homeward trip may be, and probably are, exaggerated, but the evidence proves that there was discomfort and suffering by reason of the deviation from the voyage described in the contract, and the respondent is legally liable to render compensation therefor.

One of the grounds of defense relied upon is alleged waiver of claims for damages by acceptance, of the wages earned under the contract. This is on the theory that a party cannot blow hot and blow cold at the same time. It is assumed that the acceptance of wages was an affirmance of the contract, and that the libelants are now estopped to deny its validity. The ready answer to this is that it is wholly unnecessary to invoke an estoppel to sustain the validity of the contract. This is so for the reason that the validity of the contract is not in issue. On the contrary, the object of the suit is to bring the owner of the ship to account for an alleged tortious breach of a valid contract which the libelants were entitled to have performed according to its terms. The libelants received all that was promised in the contract, but it does not follow that payment of what was admitted to be due, under the contract, absolves the owner of the ship from liability to render compensation for a tortious injury, merely because the tort was a violation of the contract. Many thousands of cases have been and are now being prosecuted by employés against their employers, and by passengers against carriers to recover damages for personal injuries inflicted in violation of contracts, but it has never been supposed that payment of the wages earned by an employé, or the delivery of a passenger at his journey's end, would constitute a legal bar to the recovery of damages for injuries suffered in the service, or by the passenger in transit, as a consequence of a neglect of duty which the employer or carrier owed, by reason of the contract in either case, creating the relationship of master and servant or of carrier to passenger.

While the ship was in the ice, Mr. Raymond, one of the libelants, by request of the chief engineer, accompanied the chief officer on a trip from the ship over the ice to send a telegram to San Francisco, for the purpose of reporting the perilous situation of the vessel, and, although he may be considered as a volunteer in rendering that service, his claim to compensation for extraordinary suffering on such a perilous trip appears to me to be entirely just, because when the trip was made the ship was in imminent danger of destruction by being crushed by masses of ice which surrounded her, and a desperate attempt to send information of her situation appeared to be necessary. That necessity alone justified the captain in permitting two of his officers to risk the sacrifice of their lives by such an adventure. It is proved by uncontradicted evidence that Mr. Raymond's sufferings incident to the trip were intense, and that as a consequence of his exposure he became afflicted with rheumatism, and has endured a great deal of pain. Mr. Moritz, the second mate, has also suffered from rheumatism, and been disabled for a considerable time after his return, which the evidence shows to be a consequence of exposure to cold and discomfort on this voyage.

In consideration of all the facts and the law, the court awards damages to the libelants as follows: To Mr. Raymond, $2,000; to Mr. Moritz, $1,000; and to each of the other libelants and intervening libelants, $200, and the taxable costs.